UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10911-GAO

GREGG C. MCALLISTER and NATALIE M. MCALLISTER,
Plaintiffs,

v.

COUNTRYWIDE HOME LOANS, INC., BANK OF AMERICA, N.A.,
DITECH FINANCIAL LLC f/k/a GREEN TREE SERVICING LLC, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
Defendants.

OPINION AND ORDER
June 16, 2016

O'TOOLE, D.J.

   *Pro se* plaintiffs, Gregg C. McAllister and Natalie M. McAllister, seek a preliminary injunction to stop an impending foreclosure on their family home. The foreclosure sale was initially scheduled for June 9, 2016. The Court granted the plaintiffs' request to temporarily enjoin that sale to permit fuller briefing and a hearing on the matter. Both the plaintiffs and the foreclosing entity, Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") participated at that hearing.

   For the reasons discussed below, the McAllisters' request for a preliminary injunction is denied. Most importantly, they have failed to show a likelihood of success on the merits of their claims.

## I.       Factual Background[1]

The McAllisters refinanced their home with a loan from Countrywide Home Loans, Inc.

("Countrywide") in the spring of 2006. That loan is identified by a note dated March 27, 2006,

payable to Countrywide. (See Aff. of Stewart Derrick, Ex. 1 (dkt. no. 29-1) [hereinafter Note].)

That loan was secured by a mortgage on the home, also dated March 27, 2006, and initially with

Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee. (See Aff. of Stewart

Derrick, Ex. 2 (dkt. no. 29-2) [hereinafter Mortgage].)

The mortgage has been assigned twice in the intervening years. MERS assigned it BAC

Home Loans Servicing, LP ("BAC") on April 21, 2011. (See Aff. of Stewart Derrick, Ex. 3 (dkt.

no. 29-3).) Bank of America, N.A. ("BANA"), the successor in interest through a merger to BAC,

assigned the mortgage to Green Tree Servicing LLC ("Green Tree") on June 18, 2013. (See Aff.

of Stewart Derrick, Ex. 5 (dkt. no. 29-5).) These assignments were recorded. After two other

entities merged into Green Tree in August 2015, Green Tree changed its registered name in

Massachusetts to "Ditech Financial LLC." (See Aff. of Stewart Derrick, Ex. 11 (dkt. no. 29-11).)

The path of the note is less clear in the documentary record. Ditech recorded an affidavit

with the registry of deeds that states that it is "the authorized agent of the holder of said promissory

note for purposes, inter alia, of foreclosing said mortgage on behalf of said note holder." (See Aff.

of Stewart Derrick, Ex. 12, at 4 (dkt. no. 29-12).) In what appears to be a letter to the McAllisters,

the same employee who signed the above affidavit certified that Ditech "has the right to foreclose

---

[1] The factual basis for this opinion is taken from the pleadings, the documents filed on the docket by either side, and the parties' representations at the hearing. See Asseo v. Pan Am. Grain Co., 805 F.2d 23, 25–26 (1st Cir. 1986) ("Affidavits and other hearsay materials are often received in preliminary injunction proceedings."). The conclusions herein, for the purposes of a preliminary injunction, "are to be understood as statements of probable outcomes" of the evidence if taken to trial. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991).

because it is the holder of the mortgage and the authorized agent of the owner of the Note, which is Fannie Mae."[2] (See Aff. of Stewart Derrick, Ex. 13, at 6 (dkt. no. 29-13).) Other copies of communications between Ditech and the McAllisters suggest that Ditech is the servicer for this loan on behalf of Fannie Mae. (See, e.g., Aff. of Stewart Derrick, Ex. 9 (dkt. no. 29-9).) The copies of the note in the record show it has been stamped with a blank endorsement "without recourse" by Countrywide. (Note, at 3.)[3]

The McAllisters describe difficulty in making their mortgage payments following the recent economic downturn. At the time, their servicer was Bank of America.[4] They state that they tried making payments on their mortgage through a forbearance agreement, but that Bank of America terminated it.

The McAllisters do not deny that they are behind on their mortgage. A letter sent to the McAllisters in September 2014 by Ditech's (then Green Tree's) counsel stated that the redemption amount, including interest and other charges, was in excess of $335,000 on their originally $242,000 loan. (See Aff. of Stewart Derrick, Ex. 8, at 2 (dkt. no. 29-8).) Ditech represented at the hearing that it continues to pay property taxes and insurance on the property.

On February 25, 2014, Ditech (then Green Tree) sent the McAllisters a "150 Day Right to Cure Your Mortgage Default" letter alerting the McAllisters of the possibility of loan acceleration and foreclosure. (See Aff. of Stewart Derrick, Ex. 6, at 2, 5–6 (dkt. no. 29-6).) As mentioned above, the McAllisters received a letter in September 2014 stating that their loan was being accelerated and notifying them of the redemption amount. Ditech (then Green Tree) obtained a judgment from

---

[2] "Fannie Mae" is another name for the Federal National Mortgage Association.
[3] "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Khalsa v. Sovereign Bank, N.A., 44 N.E.3d 863, 864 (Mass. App. Ct. 2016) (quoting M.G.L. ch. 106, § 3-205(b)).
[4] Whether the relevant entity was at that time BAC or BANA is unclear.

the Massachusetts Land Court on October 21, 2014, certifying that the McAllisters were not entitled to benefits under the Servicemembers Civil Relief Act. (See Aff. of Stewart Derrick, Ex. 7, at 2 (dkt. no. 29-7).)

The McAllisters next received a letter from Ditech on January 27, 2015, offering a potential mortgage modification. The letter states that the modification was being offered by Fannie Mae and was "designed for customers, like you, who for some reason did not meet all of the eligibility criteria for a permanent modification under the government's Home Affordable Modification Program (HAMP), or were unable to successfully make payments under a HAMP modification or another modification." (See Aff. of Stewart Derrick, Ex. 9, at 2 (dkt. no. 29-9).) A follow-up letter from Ditech on June 5, 2015, states that the McAllisters did not receive a permanent modification for failure to make payments under that plan. (See Aff. of Stewart Derrick, Ex. 10, at 2 (dkt. no. 29-10).) The McAllisters claim that this plan would have required their payment of a substantial percentage of their average monthly income.

On May 10, 2016, Ditech sent the McAllisters a notice of its intent to foreclose on June 9 and of the possibility of a deficiency following the sale. (See Aff. of Stewart Derrick, Ex. 13, at 2–6 (dkt. no. 29-13).) The McAllisters filed their Complaint in this Court on May 19. The foreclosure was postponed pending the outcome of the preliminary injunction motion.

## II.   Background Legal Principles

Under Massachusetts property law, a mortgage and a note may be separated. See generally Eaton v. Fed. Nat. Mortg. Ass'n, 969 N.E.2d 1118, 1124–26 (Mass. 2012). The note represents the debt itself—the promise to pay. See id. at 1124. The mortgage, by contrast, is the legal title to the property and "serves as security for" the obligation of the note. See id. The mortgage holder's

interest is merely "technical"; the note holder "has an equitable right to obtain an assignment of the mortgage." Id. at 1124–25 (citations omitted).

As a consequence "a mortgage ultimately depends on the underlying debt for its enforceability." Id. at 1126 n.11. When the mortgagee—that is, the holder of the mortgage—decides to pursue foreclosure, it may only do so if it either has acquired the note or is acting specifically on the note holder's behalf. See id. at 1129–31. In this way the note and mortgage are brought back together in the foreclosure.[5]

While mortgages are often recorded with the relevant registry of deeds, notes are commonly not. See id. at 1131–32. The Eaton court suggested that a foreclosing mortgagee could satisfy the requirement to bring together the note and mortgage by recording an affidavit stating "that the mortgagee either held the note or acted on behalf of the note holder." See id. at 1133 n.28. Massachusetts General Laws Chapter 244, Section 35C, enacted in the wake of Eaton, in part puts that approach into practice.

In Eaton itself, the Supreme Judicial Court stated that a mere claim that the mortgagee did not hold the note or act on the note holder's behalf based on "information and belief" was insufficient to support a preliminary injunction against eviction on the theory that the mortgagee had not had the authority to engage in the foreclosure. See 969 N.E.2d at 1133–34. Other decisions since Eaton have reinforced the proposition that a bare challenge to the mortgagee's possession of the note or authority from the note holder—especially where the mortgagee has recorded an affidavit claiming authority—does not satisfy the preliminary injunction standard. See, e.g., O'Neil v. Bank of N.Y. Mellon, No. ESCV201401895, 2015 WL 5254320, at *2 (Mass. Super.

---

[5] After a foreclosure sale, the note holder may bring a deficiency action for any amount of the debt still remaining, provided the proper notice is given. See Eaton, 969 N.E.2d at 1128–29 & nn. 18, 19; M.G.L. ch. 244, § 17B.

Ct. July 20, 2015) (noting prior procedural history); Hall v. Nationstar Mortg., LLC, 45 N.E.3d

611, 2016 WL 608937, at *2 (Mass. App. Ct. Feb. 16, 2016) (table case) (affirming dismissal

where, without evidence, the home owner challenged the facts contained in the recorded affidavit

certifying authorization from note holder to foreclose).

"In the preliminary injunction context, the mortgagor [that is, the home owner] is required

'to show that she has a reasonable likelihood of establishing that, at the time of the foreclosure

sale, the mortgage holder neither held the note nor acted on behalf of the note holder.'" Khalsa v.

Sovereign Bank, N.A., 44 N.E.3d 863, 868 n.7 (Mass. App. Ct. 2016) (quoting Eaton, 969 N.E.2d

at 1134). The home owner has the burden to make a "plausible showing" on this point. See id.; see

also Rice v. Wells Fargo Bank, N.A., 2 F. Supp. 3d 25, 34 (D. Mass. 2014) ("It is not Defendant

who must present evidence of its ownership of the note in order to avoid entry of an injunction.

Instead, it is Plaintiffs who must prove that they are entitled to an injunction.").

## III.    Discussion

This Court's analysis begins with the familiar preliminary injunction standard.

> Whether or not to issue a preliminary injunction depends upon four factors: (1) the
> movant's probability of success on the merits, (2) the likelihood of irreparable harm
> absent preliminary injunctive relief, (3) a comparison between the harm to the
> movant if no injunction issues and the harm to the objectors if one does issue, and
> (4) how the granting or denial of an injunction will interact with the public interest.

New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 8–9 (1st Cir. 2002). Of these

four, the likelihood of success on the merits dominates. "[I]f the moving party cannot demonstrate

that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."

Id.

The analysis of the McAllisters' motion begins and ends with this factor. They have raised

a host of challenges—in the Complaint, in their other papers, at the hearing—to Ditech's

foreclosure plans. Yet they have not demonstrated that any one of them is likely to succeed. For all that appears, the loan papers seem to be in the proper order for a foreclosure sale.

At the hearing, the McAllisters presented three principal arguments. First, they argue that under Article Three of the Uniform Commercial Code ("UCC"), the security (i.e. the mortgage) should follow the note, and a transfer of the note without the mortgage prevents enforcement of the security. As the background on Massachusetts mortgage law above makes clear, this is not the case. The note and the mortgage may be split without issue. See Eaton, 969 N.E.2d at 1124. The specific note here, as was the note in many other mortgage cases, was indorsed in blank by the issuer. See, e.g., Khalsa, 44 N.E.3d at 864; Dyer v. U.S. Bank, N.A., Civil Action No. 15-12820-MPK, 2015 WL 4364141, at *3 (D. Mass. July 16, 2015). A note indorsed in blank is payable to whoever holds it, and the holder acquires "any right of the transferor to enforce the instrument." See M.G.L. ch. 106, §§ 3-205(b), 3-203(b); see also Khalsa, 44 N.E.3d 863 at 864. Under Massachusetts law, including the UCC, the McAllisters have not shown any problems with the transfer of the note.

The McAllisters next argue that the mortgage was assigned in blank. They are certainly right that assignments of a *mortgage* may not be in blank. See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 53 (Mass. 2011). However, a *note* may be transferred that way. M.G.L. ch. 106, § 3-205(b). Here, the recorded mortgage assignments do not appear to be in blank; only the note is so indorsed.[6]

---

[6] The McAllisters also suggest that the note and mortgage were created on different dates. However, the copies of the note and the mortgage placed into the record are both dated March 27, 2006. The notary's jurat recites that both McAllisters appeared and signed the mortgage on that date. The McAllisters also point out that only Gregg signed the note, but both Gregg and Natalie signed the mortgage. Despite the oddity of that practice, it is not inherently inappropriate. Cf. Barash v. CitiMortgage, Inc., 991 N.E.2d 664, 2013 WL 4052866, at *1 (Mass. App. Ct. Aug. 13, 2013) (table case) (noting similar difference in signatories); Ferreira v. Mortg. Elec. Registration

The McAllisters contend that Ditech has failed to negotiate a loan modification in good faith. However, the record contains evidence of an attempted modification, and indeed the McAllisters referenced it in their oral argument. Instead, they claim that the suggested payment was too high for their income, so it was not realistically feasible. They argue that federal guidelines require a proposed modification payment to be at most 31% of their gross monthly income. This figure appears the come from the Home Affordable Modification Program ("HAMP") guidelines. See Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages, Version 5.1 (May 26, 2016), at 105, https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/ mhahandbook_51.pdf. However, the McAllisters do not claim that they are now eligible for a HAMP modification, and the evidence in the record suggests that they are not. (See Aff. of Stewart Derrick, Ex. 9, at 2 (dkt. no. 29-9).)[7]

Mortgagees generally have no duty to negotiate loan modifications with delinquent borrowers. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 492–93 (1st Cir. 2013). The McAllisters have not provided anything more to show some other entitlement. See Barash v. CitiMortgage, Inc., 991 N.E.2d 664, 2013 WL 4052866, at *2 (Mass. App. Ct. Aug. 13, 2013) (table case) ("[B]ecause [the mortgagee] did not seek to shorten the 150–day [notice] period, the statute [M.G.L. ch. 244, § 35A] did not obligate it to engage in 'a good faith effort to negotiate a commercially reasonable alternative to foreclosure.'").

---

Sys., Inc., 794 F. Supp. 2d 297, 302–03 (D. Mass. 2011) (finding that statutory right to rescind note only applied to signing spouse). Importantly here, both McAllisters signed the mortgage, the document that transfers title in the land. See Eaton, 969 N.E.2d at 1124.

[7] Nor would being eligible for a HAMP modification likely lead to any enforceable rights with respect to Ditech or Fannie Mae. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491–92 (1st Cir. 2013).

The McAllisters have also raised issues with "Ditech Financial LLC" pursuing foreclosure when "Green Tree Servicing LLC" appears on the various mortgage papers and notices.[8] But as discussed above, those two entities are actually one and the same. Ditech has merely changed its name during the course of the parties' relationship.

Another challenge the McAllisters levy is that Ditech violated Mass. Gen. Laws ch. 244, § 14 by not including the full redemption amount in the notice of the foreclosure sale. However, Section 14 does not require that the mortgagee provide the redemption amount. See M.G.L. ch. 244, § 14. Indeed, Ditech's notice tracked the statutory form notice. (See Aff. of Stewart Derrick, Ex. 13, at 2 (dkt. no. 29-13).)

The McAllisters' bare assertion that Ditech is not the holder of the mortgage or acting on behalf of the note holder—Count IV of the Complaint—is inadequate. As discussed above, the McAllisters bear the burden of providing some evidence that Ditech's affidavits or the recorded assignments are invalid, but they have not done so. See Eaton, 969 N.E.2d at 1133–34. The note is indorsed in blank and is successfully transferred to whoever possesses it. See M.G.L. ch. 106, § 3-205(b). Ditech has certified—without any evidentiary objection—that Fannie Mae holds it and has authorized the foreclosure.

In the Complaint, the McAllisters also assert that Ditech has committed fraud in the concealment and slander of title in pursuing foreclosure and that the underlying debt is an unconscionable contract—Counts I, II, and III. The justifications for these claims are far from clear, but they appear to be related to the movement of the McAllisters' note and mortgage among a variety of entities. The McAllisters do not connect how these third party transactions—transfers

---

[8] The McAllisters have not argued that these particular notices or procedures—the right to cure letter and Ditech's judgment in the Land Court under the Servicemembers Civil Relief Act—were themselves improper, only that "Green Tree" had orchestrated them.

in interest to the mortgage or the note—have caused them any harm, or how they are relevant in any way to the McAllisters' original decision to enter into this loan. The note and the mortgage both contemplate the possibility of sale or transfer without notifying the McAllisters. (See Note, ¶ 1 ("I understand that the Lender may transfer this Note."); Mortgage, ¶ 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.").)

That is the sum of the arguments against foreclosure. The McAllisters have not shown that any of them is likely meritorious. While the McAllisters argue that they will suffer irreparable harm if forced out of their home and that that harm is greater than any potential harm felt by Ditech, those factors do not overcome the problems with the merits of their case. See New Comm Wireless Servs., 287 F.3d at 13–14 ("Because a showing of likelihood of success on the merits is essential to the issuance a preliminary injunction, it would serve no useful purpose . . . to discuss how this case fits into the remaining three facets of the preliminary injunction framework." (citations omitted)).

## IV.    Conclusion

The Court is sympathetic to the plaintiffs' situation. Nor does the Court ignore the practical reality that denying the preliminary injunction will lead to the foreclosure sale as scheduled on June 20.[9] Unfortunately, from the record it appears that it has been some time since the McAllisters have been able to make payments under their mortgage loan. The best course of action may be to sell the home for the highest price possible and move forward. See MacKenzie, 738 F.3d at 493 ("[M]ortgagees have an independent duty at common law to protect the interests of the mortgagor

---

[9] The Court granted Ditech's request to reschedule the foreclosure date by public proclamation, an accepted practice in Massachusetts. See Fitzgerald v. First Nat'l Bank of Bos., 703 N.E.2d 1192, 1194–95 (Mass. App. Ct. 1999).

in exercising a power of sale in a mortgage. Typically, this entails making reasonable efforts to sell the property for the highest value possible." (citations and internal quotation marks omitted)).

For the foregoing reasons, this Court's June 7, 2016, Order (dkt. no. 30) enjoining the defendants from foreclosing on the McAllisters' property is hereby DISSOLVED. The McAllisters' Motion for Temporary Restraining Order (dkt. no. 14) requesting a preliminary injunction is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge