UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10911-GAO

GREGG C. MCALLISTER and NATALIE M. MCALLISTER,
Plaintiffs,

v.

COUNTRYWIDE HOME LOANS, INC., BANK OF AMERICA, N.A., DITECH FINANCIAL
LLC F/K/A/ GREEN TREE SERVICING LLC, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
Defendants.

OPINION AND ORDER
March 29, 2017

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and
Recommendation (dkt. no. 58) ("R&R") recommending that the motion by defendants
Countrywide Home Loans, Inc., Bank of America, N.A. ("BANA"), and Mortgage Electronic
Registration Systems, Inc. ("MERS") to dismiss the Complaint (dkt. no. 42) be allowed as to
Counts One through Four, but not Count Five.[1] The R&R also recommends allowing the motion
by defendant Ditech Financial LLC to dismiss the Complaint (dkt. no. 37) as to Count Four but
denying the motion as to Count Five. The defendants have filed objections to the R&R (dkt. nos.
60, 62). Ditech objects on the ground that the magistrate judge erroneously construed Counts Three
and Five of the Complaint, and the other defendants echo Ditech's objection with respect to Count
Five. The plaintiffs have not made any objection to the R&R.

---

[1] The R&R recommends that Count One be dismissed without prejudice.

The magistrate judge construed Count Three of the Complaint as having been brought against all "defendants," including Ditech,  although no action or omission by it is mentioned in that count. Because Ditech did not move to dismiss that count as the other defendants did, the magistrate judge concluded that Count Three remains as against Ditech. The magistrate judge also construed Count Five of the Complaint as a claim pursuant to Massachusetts General Laws Chapter 93A. Because none of the defendants addressed the merits of that claim in their motions to dismiss, the magistrate judge concluded that Count Five should not be dismissed against any of the defendants.

I agree with the magistrate judge that the term "defendants" when used in a multi-defendant case can ordinarily be understood to refer to all defendants, but there can be exceptions. In Count Three, the only acts or omissions that are pled to support the legal theory of the claim are attributed to defendants Countrywide, BANA, and MERS by name. (See Compl. ¶¶ 35–41 (dkt. no. 1).) Unlike that specificity with respect to the other defendants, Count Three makes no specific allegation against (or specific mention of) Ditech to support a conclusion that it should be held liable for slander of title. The statements the plaintiffs rely on in support of their slander of title claim are the "recording[s] of the purported 'Assignments of Mortgage' into the Official Records of the Middlesex County Recorder's Office," (id. ¶ 41), and the Complaint alleges that it was MERS and BANA that recorded the assignments on June 8, 2011 and July 19, 2013 respectively, (id. ¶ 39). I therefore agree with Ditech's objection that the reference to "defendants" in Count Three is more reasonably understood to refer to the defendants whose acts are specifically alleged in that count, and not to Ditech. If it were read to include Ditech, it would fail the plausibility test established by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Finally, even if such a claim had been plausibly alleged against Ditech, the magistrate judge's well-developed reasoning with respect to Count Three's failure to state a claim as alleged against the other defendants would also apply to Ditech, and that claim would accordingly be without merit as well.

With respect to Count Five, I agree with the magistrate judge that the Complaint, read liberally, purports to allege a claim under Massachusetts General Laws Chapter 93A against all defendants. However, as the R&R makes clear, the alleged conduct recited in the other counts on which a Chapter 93A claim might conceivably be premised was, the magistrate judge rightly concluded, not wrongful. No other particular basis for Chapter 93A liability is alleged. The mention of Chapter 93A in Count Five may be adequate to identify a theory of liability the plaintiffs were attempting to invoke, but without supporting factual allegations, it is inadequate to state a plausible claim for Chapter 93A liability against any of the defendants.

Additionally, the defendants appear to be correct that the apparent absence of a pre-suit "Chapter 93A letter" also dooms the Complaint's attempted claim.

Accordingly, I approve and ADOPT the magistrate judge's recommendations except as described above. The defendants' Motions to Dismiss (dkt. nos. 37, 42) are GRANTED in full. Count One is dismissed without prejudice, and the remaining counts are dismissed with prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GREGG C. MCALLISTER and
NATALIE M. MCALLISTER,
     Plaintiffs,

     v.

                                    CIVIL ACTION NO.
COUNTRYWIDE HOME LOANS, INC.,       16-10911-GAO
BANK OF AMERICA, N.A, DITECH
FINANCIAL LLC F/K/A GREEN TREE
SERVICING LLC, and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.,
     Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT DITECH FINANCIAL'S MOTION TO DISMISS**
**(DOCKET ENTRY # 37); DEFENDANTS COUNTRYWIDE HOME**
**LOANS, INC., BANK OF AMERICA, N.A. AND MORTGAGE**
**ELECTRONIC REGISTRATION SYSTEMS,**
**INC.'S MOTION TO DISMISS**
**(DOCKET ENTRY # 42)**

**March 1, 2017**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion to dismiss filed by

defendant Ditech Financial LLC f/k/a Green Tree Servicing LLC

("Ditech") and a motion to dismiss filed by defendants

Countrywide Home Loans, Inc. ("Countrywide"), Bank of America,

N.A. ("BANA") and Mortgage Electronic Registration System, Inc.

("MERS").[1]  (Docket Entry ## 37 & 42).  Plaintiffs Gregg C.

McAllister ("Gregg McAllister") and Natalie M. McAllister

---

[1]  Countrywide, BANA and MERS are collectively referred to as
"defendants."

("plaintiffs") oppose both motions.  (Docket Entry ## 40 & 47).
After conducting a hearing on December 6, 2016, this court took
the motions (Docket Entry ## 37 & 42) under advisement.

PROCEDURAL BACKGROUND

On May 19, 2016, plaintiffs filed a complaint seeking to
prevent the foreclosure and sale of their residence at 31 Cutler
Drive in Ashland, Massachusetts ("the property").  (Docket Entry
# 1).  The complaint sets out the following causes of action:
(1) fraud in the concealment (Count One); (2) unconscionable
contracts (Count Two); (3) slander of title (Count Three); (4)
wrongful foreclosure (Count Four); and (5) a temporary
restraining order and a preliminary injunction based on a
violation of Massachusetts General Laws chapter 93A ("chapter
93A") (Count Five).  The captions of the counts do not identify
any particular defendant.  The body of counts one and two
depicts facts related to Countrywide and repeatedly refers to
Countrywide.  Counts one and two therefore raise claims only
against Countrywide.  The slander of title claim is based upon
concealing a transfer made by Countrywide and thereafter
recording assignments involving MERS, BAC and Green Tree
Servicing LCC ("Green Tree"), a company that subsequently merged
into Ditech.  Count Three references all "defendants."  (Docket
Entry # 1, ¶¶ 39, 40).  As such, it is brought against all
defendants.  Counts four and five are also brought against all

2

"defendants."  (Docket Entry # 1, ¶¶ 42-59).  The complaint

seeks both declaratory and monetary relief.  (Docket Entry # 1).

On May 26, 2016, plaintiffs filed a motion for a temporary

restraining order ("TRO") seeking to stop a pending foreclosure

on the property.  (Docket Entry # 14).  The court allowed the

motion in part and set a hearing on the motion for a preliminary

injunction.  On June 16, 2016, the court denied the motion for a

preliminary injunction and dissolved the prior Order allowing

the TRO.  The court determined that plaintiffs failed to show a

likelihood of success on the merits of their claims.  (Docket

Entry # 38).  The substance of the Order denied the preliminary

injunction relief that plaintiffs seek in Count Five but did not

address the merits of the chapter 93A claim.

<u>STANDARD OF REVIEW</u>

To survive a Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") motion

to dismiss, the complaint "must contain 'enough facts to state a

claim to relief that is plausible on its face'" even if actual

proof of the facts is improbable.  <u>Bell Atlantic v. Twombly</u>, 550

U.S. 544, 556, 570 (2007); <u>Miller v. Town of Wenham

Massachusetts</u>, 833 F.3d 46, 51 (1st Cir. 2016).  The "standard is

'not akin to a "probability requirement," but it'" requires

"'more than a sheer possibility that a defendant has acted

unlawfully.'"  <u>Saldivar v. Racine</u>, 818 F.3d 14, 18 (1st Cir.

2016); <u>Feliciano-Hernández v. Pereira-Castillo</u>, 663 F.3d 527,

3

533 (1st Cir. 2011).  "[A]ll reasonable inferences" are drawn "in the pleader's favor."  Sanders v. Phoenix Ins. Co., 843 F.3d 37 (1st Cir. 2016).  Legal conclusions in the complaint are not part of the Rule 12(b)(6) record.  See In re Ariad Pharmacy, Inc. Securities Litigation, 842 F.3d 744, 750 (1st Cir. 2016).

Facts are confined to those in the complaint supplemented by matters of public record and facts susceptible to judicial notice, such as the bankruptcy filings (Docket Entry # 10-1). See Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013) (supplementing facts in complaint "by examining 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice'").  "Exhibits attached to the complaint are" also "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).  In the case at bar, the exhibits attached to the complaint include a deed; mortgage; promissory note; two assignments of the mortgage; an affidavit by Joseph R. Esquivel, Jr. ("Esquivel"); an affidavit of compliance with Massachusetts General Laws chapter 244, sections 35B and 35C; and notices pertaining to a foreclosure sale.  Accordingly,

these exhibits, filed by plaintiffs as part of the complaint, are part of the Rule 12(b)(6) record.[2]

The court may consider the seven documents that Ditech relied upon in its motion. (Docket Entry # 37). The promissory note, the mortgage, various assignments, the statutory affidavit and the letter dated May 10, 2016 are attached to the complaint and, as such, are already part of the Rule 12(b)(6) record. (Docket Entry # 1). Additionally, the certificate of amendment of a foreign limited liability company with a certificate of merger reflecting a merger between Ditech and a predecessor corporation filed with the Massachusetts Secretary of State's office is a public record and therefore part of the Rule 12(b)(6) record. (Docket Entry # 37-4). The final document that Ditech relies on is a Federal Deposit Insurance Corporation ("FDIC") Merger Decisions 2011. The document, located at https://www.fdic.gov/bank/individual/merger/2011/2011.pdf ("FDIC website"), evidences the merger between BAC and BANA and is subject to judicial notice. See Rice v. Wells Fargo Bank, N.A., 2 F.Supp.3d 25, 28, n.7 (D.Mass. 2014) (taking judicial notice of merger and name change of bank as lender in mortgage loan).

---

[2]  Plaintiffs' argue, in part, that a number of the same documents filed by one or more defendants are not subject to judicial notice and not properly authenticated or verified as original documents. (Docket Entry ## 40, 47). The argument is moot to the extent it objects to the consideration of the above noted documents that are part of the complaint.

Because the referenced documents were attached to the complaint,
are public records, or are susceptible to judicial notice, they
constitute part of the Rule 12(b)(6) record.

FACTUAL BACKGROUND

On March 27, 2006, plaintiffs refinanced a mortgage on
their property and Gregg McAllister signed the promissory note
in the amount of $242,000 payable to Countrywide.  Plaintiffs
signed the mortgage, secured by the $242,000 loan, with MERS
designated as the mortgagee and as nominee for Countrywide, the
lender, and its successors and assigns.  (Docket Entry # 1-2,
pp. 10-24).  "Shortly after plaintiff signed" the mortgage,
Countrywide, the lender as opposed to the mortgagee, sold its
interest in the mortgage and the promissory "[n]ote to Fannie
Mae REMIC Trust 2006-37."  (Docket Entry # 1, ¶ 13) (Docket
Entry # 1-2, p. 3, ¶¶ 12-13).  Thereafter, the mortgage was
assigned on two occasions.

First, MERS assigned the mortgage "without recourse" to BAC
Home Loans Servicing, LP ("BAC") on April 21, 2011.  (Docket
Entry # 1-2, p. 27).  The assignment is notarized, signed by
MERS' Assistant Secretary and filed at the Middlesex South
Registry of Deeds ("the registry") in Book 56963, page 381.
More specifically, Ilona Dawidowicz ("Dawidowicz"), in her
capacity as assistant secretary for MERS, signed the assignment,

6

which also includes MERS' corporate seal.  (Docket Entry # 1-2, p. 27).

"MERS Procedures Manual, Release 19.0, dated June 14, 2010" states that, "'Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt.  The debt can only be transferred by properly endorsing the promissory note to the transferee.'"  (Docket Entry # 1-2, pp. 4-5) (emphasis omitted).  On June 24, 2011, BAC merged into BANA, as reflected in the FDIC website.

A second assignment took place on June 18, 2013. Specifically, BANA assigned the mortgage to Green Tree.  (Docket Entry # 1-2, p. 29).  This assignment was signed by Allison M. Hallas, assistant vice president for BANA, and notarized as evidenced by the signature and seal of a notary.  (Docket Entry # 1-2, p. 29).  Like the first assignment, the second assignment was properly recorded.  (Docket Entry # 1-2, pp. 27, 29).

As stated in the June 18, 2013 assignment, BANA "grant[ed], s[old], assign[ed], transfer[red] and convey[ed]" to Ditech "all beneficial interest under" the mortgage "together with the note(s) and obligations therein described and the money due to become due thereon with interest and all rights accrued or to accrue under said Mortgage."  (Docket Entry # 1-2, p. 29).  In August 2015, two additional entities merged into Green Tree and,

7

consequently, Green Tree changed its registered name in Massachusetts to "Ditech Financial LLC." (Docket Entry # 37-4, p. 2). Ditech filed an affidavit with the registry that states that it is "the authorized agent of the holder of said promissory note for purposes, inter alia, of foreclosing said mortgage on behalf of said note holder." (Docket Entry # 1-2, pp. 31-34). Paragraph 20 of the uniform covenants of the mortgage provides that, "The Note or a partial interest in the Note (together with this Security Instrument[3] can be sold one or more times without prior notice to Borrower." (Docket Entry # 1-2, p. 21).

On May 10, 2016, plaintiffs were sent a notice of a mortgage foreclosure sale from Harmon Law Offices, P.C. (Docket Entry # 1-2, p. 37). The notice informed plaintiffs that a foreclosure sale of the property was scheduled for June 9, 2016. (Docket Entry # 1-2, p. 41). A "Certification Pursuant to Massachusetts 209 CMR 18.21A(2)" date stamped April 4, 2016 states that Ditech had the "right to foreclose because it is . . . the holder of the mortgage and authorized agent of the owner of the Note, which is Fannie Mae." (Docket Entry # 1-2, p. 38).

DISCUSSION

---

[3] The term "Security Instrument" refers to the mortgage. (Docket Entry # 1-2, p. 13).

Defendants move to dismiss counts one through four in the complaint.  With respect to Count One, defendants maintain that, due to a three-year statute of limitations applicable to fraud in Massachusetts, the claim is time barred.  They additionally assert that, even if the claim is not time barred, plaintiffs fail to meet the heightened pleading requirements to state a claim for fraud under Fed.R.Civ.P. 9(b) ("Rule 9(b)") as well as show any actual damage.  With respect to the latter argument, defendants correctly point out that plaintiffs signed the mortgage, which disclosed the transferability of the mortgage and the promissory note.  As to Count Two, defendants maintain that, due to a six-year statute of limitations, the contract claim is time barred.  In addition, they contend that plaintiffs fail to state a claim that the mortgage was an unconscionable contract.

With respect to Count Three, defendants submit that "[p]laintiffs fail to assert any actual wrongful conduct by [d]efendants" and maintain that "[p]laintiffs do not have standing to challenge an assignment from MERS to any other party." (Docket Entry # 43, p. 9).  Defendants contend that the two assignments were valid because:  the mortgage expressly authorized the 2011 and 2013 assignments; the assignments complied with Massachusetts General Laws chapter 183, section 54B ("section 54B"); and MERS had the authority to assign the

mortgage.  Defendants additionally submit that plaintiffs fail
to plead special damages.

With respect to Count Four, defendants argue that the claim
is predicated on the erroneous assumption that Ditech has no
right, title or interest in the property.  Ditech also moves to
dismiss Count Four because MERS had the authority to assign the
mortgage both due to its status as an equitable trustee for the
note holder and under the terms of the mortgage.  Interpreting
Count Five consistent with its caption as a TRO application to
show cause for a preliminary injunction, Ditech seeks to dismiss
Count Five because a claim for injunctive relief is a remedy and
not a cause of action.

I.  Fraudulent Concealment Claim

In Count One, the complaint alleges that Countrywide
concealed that fact that it was not a depository bank.  (Docket
Entry # 1, ¶ 18).  Countrywide also gave plaintiffs
consideration for entering into the mortgage and the promissory
note by lending them the $242,000 but "concealed a third party
Securitizer" and the terms of "Securitization Agreements,"
including financial incentives with the Federal National
Mortgage Association ("Fannie Mae").  (Docket Entry # 1, ¶ 18).
As stated in the complaint, Countrywide's failure to disclose
"the true character of the loan" by concealing the foregoing
precluded any "meeting of the minds between" plaintiffs and

Countrywide and plaintiffs reasonably relied on Countrywide's

misrepresentations or nondisclosures to their detriment.[4]

(Docket Entry # 1, ¶¶ 19, 22).

At the outset, it is worth recognizing that, although

plaintiffs caption the count as "Fraud in the Concealment,"

there is no such cause of action.  See Harry v. Countrywide Home

Loans Inc., 2016 WL 7013451, at *5 (D.Mass. Nov. 30, 2016); see

also Epstein v. C.R. Bard, Inc., 460 F.3d 183, 189 (1st Cir.

2006) ("[f]raudulent concealment is a tolling doctrine codified

in Mass. Gen. Laws. ch. 260, § 12").  "[F]raud in the

concealment . . . does not provide an independent cause of

action.  Rather, it tolls the statute of limitations if 'the

wrongdoer concealed the existence of a cause of action through

some affirmative act done with intent to deceive.'"  Harry v.

Countrywide Home Loans Inc., 2016 WL 7013451, at *5 (quoting

Abdallah v. Bain Capital LLC, 752 F.3d 114, 119-20 (1st Cir.

2014), with brackets and ellipses omitted); see Mass. Gen. Laws

ch. 260, § 12.  Consequently, liberally construing the

complaint, Count One sets out a cause of action for fraud and/or

_____

[4] Legal conclusions, such as the above sentence, are not part of
the facts in the complaint.  See Soto-Torres v. Fraticelli, 654
F.3d 153, 157 n.2 (1st Cir. 2011) ("complaint's allegations that
Soto-Torres was 'illegally and unreasonabl[y] detained' and that
'excessive force' was used in pushing him to the floor are legal
conclusions that are not to be credited"); Dixon v. Shamrock
Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008).

a basis to toll a statute of limitations under the fraudulent concealment doctrine.

Defendants assert that the claim is untimely and, alternatively, fails to meet the heightened pleading standard of Rule 9(b).  Turning to the latter argument, Rule 9(b) dictates that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b).  With respect to fraud, the particularity requirements "mandat[e] 'specifics about the time, place, and content of the alleged false representations.'"  Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013) (quoting Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 279–80 (1st Cir. 2013)).  The First Circuit in Woods considered a complaint insufficient because, although it "include[d] a basic recitation of the elements of fraud, [Woods did] not indicate when, where, and how often the allegedly false statements were made or what, specifically, was stated."  Id. The complaint was also "wholly silent on the issue of her actual reliance."  Id.

Here too, the complaint, other than general statements that Countrywide "concealed a third party Securitizer" and "the terms of the Securitization," does not identify the time, the place and the content or specifics of the securitization agreement and the financial incentives Fannie Mae provided Countrywide.  The

12

complaint makes only a blanket statement that plaintiffs reasonably relied on Countrywide's misrepresentations to their detriment.  (Docket Entry # 1, ¶ 22).  The complaint also fails to identify the time, place or how often Countrywide concealed the fact that it was not a depository bank.  There are no facts that show that Countrywide concealed any cause of action.  See Abdallah, 752 F.3d at 121 ("fraudulent concealment requires, at least, concealment of facts necessary to bring a cause of action").

The First Circuit in Epstein rejected a complaint under Rule 9(b) which simply stated:

> that Bard concealed and suppressed "material facts" as to 1) Bard's "notification to the Food and Drug Administration pertaining to the BUD Soft Tip Catheter"; 2) Bard's "filing a Master Design History for their internal records"; 3) Bard's "resubmitting the 510k to the FDA to substantiate additional claims like radiopacity and tip strength"; 4) Bard's "dissemination to third parties of Plaintiff's technology, intellectual property and trade secrets"; 5) Bard's "use of Plaintiff's technology, intellectual property and trade secrets" without permission; and 6) Bard's "use of Plaintiff's technology, intellectual property, and trade secrets to apply for a Patent."

Epstein v. C.R. Bard, Inc., 460 F.3d at 189.  The complaint in the case at bar is even more generalized as to Countrywide. With respect to BANA and MERS, the complaint does not articulate any factual allegations that either entity engaged in fraud. Accordingly, the foregoing allegations in Count One are subject

to a Rule 12(b)(6) dismissal without prejudice for failure to comply with Rule 9(b).[5]

To the extent the fraud or the fraudulent concealment doctrine in Count One relates to the movement or transfers of the mortgage and the promissory note (Docket Entry # 38, p. 9), the count is likewise deficient under Rule 9(b).  The complaint does not set out any additional factual basis for the fraud based on the movement and transfers of the mortgage and promissory note.  Indeed, the mortgage provides that, "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  (Docket Entry # 1-2, p. 21, ¶ 20).  The promissory note similarly states that, "I understand that the Lender may transfer this Note."  (Docket Entry # 1-2, p. 10).

II.  Unconscionable Contracts Claim

In Count Two, the complaint alleges that the mortgage and/or the promissory note was an unconscionable contract. According to the complaint, Countrywide did not clarify that it was not the party giving the funds for the loan.  (Docket Entry # 1, ¶ 32).  Rather, Countrywide concealed its financial benefit of bargaining with a third party and "using a warehouse line of credit from [the] Federal National Mortgage Association[,]

---

[5]  It is therefore not necessary to address defendants' remaining arguments.

'Fannie Mae'" to provide the funds for the promissory note. (Docket Entry # 1, ¶ 32).

Defendants move to dismiss the claim as untimely and because it fails to state a plausible claim for relief.  In Massachusetts, contract claims are subject to a six-year statute of limitations.  See Mass. Gen. Laws ch. 260, § 2; Callahan v. Wells Fargo & Co., 747 F.Supp.2d 247, 252 (D.Mass. 2010).  With respect to a statute of limitations defense, a Rule 12(b)(6) dismissal is appropriate if the complaint and any other properly considered document "'fail[] to "sketch a factual predicate" that would' provide a basis for tolling the statute of limitations."  Abdallah v. Bain Capital LLC, 752 F.3d at 119.

It is true that the discovery rule operates "to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured."  Albrecht v. Clifford, 67 N.E.2d 42, 49 (Mass. 2002).  Its application "may arise in three circumstances:  where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive."  Id.; accord Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 770 (Mass. 2012).  Under the discovery rule, "a cause of action accrues when the plaintiff discovers or with

15

reasonable diligence should have discovered[6] that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm." Harrington v. Costello, 7 N.E.3d 449, 455 (Mass. 2014).

Here, however, the record does not give rise to a basis for tolling under the discovery rule. Plaintiffs executed the mortgage in March 2006. The promissory note sets out Gregg McAllister's receipt of $242,000 and his promise to repay the loan at a 6.75% interest rate over a 30-year period with monthly payments of $1,569.61. (Docket Entry # 1-2, p. 10). The mortgage reflects that it is a "Massachusetts - Single Family - Fannie Mae/Freddie Mac Uniform Instrument with MERS." (Docket Entry # 1-2, p. 13) (capitalization and bolding omitted). The mortgage thus disclosed a direct connection between Fannie Mae and MERS, Countrywide's nominee. (Docket Entry # 1-2, p. 13). Plaintiffs did not file this action until May 2016, more than ten years after Gregg McAllister signed the promissory note and plaintiffs signed the mortgage. Plaintiffs' general statement that Countrywide concealed the financial benefit it obtained at the March 2006 loan closing does not provide a factual basis for tolling. Fannie Mae's involvement and the injury to plaintiffs

---

[6] Plaintiffs' assertion that their actual knowledge via the Esquivel affidavit cures the untimeliness overlooks that, with reasonable diligence, they could have discovered the injury sooner.

was not inherently unknowable.  In light of the disclosed
relationship between Fannie Mae and MERS, Countrywide's nominee,
plaintiffs could and should have discovered the relationship
between Fannie Mae and Countrywide simply by logging onto Fannie
Mae's website which, in turn, would have uncovered the injury,
if any, to plaintiffs caused by the financial benefit given to
Countrywide.  In fact, the 2014 Esquivel affidavit plaintiffs
attach to the complaint references Fannie Mae's website as
confirming that Fannie Mae acquired an interest in the "Loan
Instrument."  (Docket Entry # 1-2, p. 3, ¶ 13).  Esquivel's
further research determined that the "Mortgage Loan Instrument
was sold sometime shortly after March 27, 2006 to multiple
classes of the Fannie Mae REMIC Trust 2006-37."  (Docket Entry #
1-2, p. 3, ¶ 12).  Hence, plaintiffs could and should have
discovered the financial benefit and purported injury during the
four year time period after they signed the mortgage.[7]
Consequently, exercising reasonable diligence, plaintiffs could
and should have discovered the harm, caused by Countrywide in
obtaining the financial benefit from Fannie Mae.

Fraudulent concealment also fails to provide a basis for
tolling.  The doctrine tolls the six-year period if defendants

---

[7]  A timely filing of the May 19, 2016 complaint would require an
accrual of the six-year limitations period on or after May 19,
2010.

fraudulently concealed the cause of action.  See Crocker v. Townsend Oil Co., Inc., 979 N.E.2d 1077, 1083 (Mass. 2012). Where, as here, there is no fiduciary relationship or special duty between plaintiffs and defendants, "'active fraud is ordinarily required to prove fraudulent concealment.'"  Id. at 1084.  An affirmative act on the part of Countrywide with an intent to deceive is therefore ordinarily required.  See Epstein v. C.R. Bard, Inc., 460 F.3d at 189 ("in the absence of a fiduciary relationship, the statute of limitations may be tolled under this doctrine 'if the wrongdoer concealed the existence of a cause of action through some affirmative act done with intent to deceive'") (quoting Puritan Med. Ctr., Inc. v. Cashman, 596 N.E.2d 1004, 1010 (Mass. 1992), with internal ellipses omitted); accord Crocker v. Townsend Oil Co., Inc., 979 N.E.2d at 1083.

Plaintiffs fail to identify and the record does not disclose any affirmative steps taken by Countrywide to conceal the cause of action or its financial benefit with Fannie Mae. See Crocker v. Townsend Oil Co., Inc., 979 N.E.2d at 1084 (rejecting fraudulent concealment doctrine due to absence of "facts alleged to support the plaintiffs' contention that Townsend actively concealed or misrepresented any of the circumstances regarding the plaintiffs' employment").  The unconscionable contracts claim in Count Two is therefore time barred.

In the alternative as to the mortgage constituting an unconscionable contract, defendants argue that plaintiffs fail to state a claim that the mortgage was an unconscionable contract or that the terms of the loan in the promissory note were grossly unfair.  (Docket Entry # 43).  In Massachusetts, a plaintiff "bears a 'heavy burden' of showing 'both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise[)].'"  Chesterton Capital LLC v. Legacy Point Capital LLC, 2016 WL 7155735, at *6 (D.Mass. Dec. 7, 2016) (quoting Bekele v. Lyft, Inc., 2016 WL 4203412 (D.Mass. Aug. 9, 2016)).  "'Procedural unconscionability evaluates the circumstances under which the contract was executed to determine if it is the product of unfair surprise.'"  Williams v. American Honda Finance Corp., 2014 WL 11090919, at *9 (D.Mass. July 3, 2014) (quoting In re Sullivan, 346 B.R. 4, 25 (Bankr.D.Mass. 2006)).  "'Substantive unconscionability evaluates the actual terms of the contract to determine if they are substantively unfair.  If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement.'"  Id.

Plaintiffs fail to demonstrate that the mortgage was procedurally or substantively unconscionable. Plaintiffs signed the mortgage and the terms were not oppressive. Plaintiffs received a 30-year fixed rate mortgage at 6.75% which fails to equate to an unconscionable contract. The purported concealment of Countrywide's "financial benefit" by using the warehouse credit line from Fannie Mae did not make the *actual* terms of the mortgage unfair or otherwise unconscionable.

In sum, given the absence of any plausible basis that the mortgage was unconscionable, Count Two fails to state a claim for relief as to the mortgage. Alternatively, the claim is time barred in its entirety.

III.  Slander of Title Claim[8]

In Count Three, plaintiffs challenge MERS' authority to assign the mortgage because MERS did not possess the promissory note. (Docket Entry # 1, ¶¶ 35-41) (Docket Entry # 47). As noted in the complaint, MERS was also "without rights" to assign the mortgage because of the unrecorded sale of the mortgage and the promissory note to Fannie Mae REMIC Trust 2006-37 shortly after the parties executed these documents. (Docket Entry # 1, ¶¶ 13, 14, 40). Accordingly, plaintiffs assert that "MERS did

---

[8]  This section also addresses, inter alia, a number of arguments relevant to the wrongful foreclosure claim.

not have the authority to execute" the assignments.[9]  (Docket
Entry # 47).  In addition, they maintain that Dawidowicz was not
an employee of MERS even though she represented herself as an
assistant secretary of MERS in the 2011 assignment.  (Docket
Entry # 47).[10]

Defendants seek to dismiss the slander of title claim based
on a number of arguments including that MERS had the authority
to assign the mortgage, the 2011 and 2013 assignments were
proper and complied with section 54B, and plaintiffs lack
standing.  In the context of the wrongful foreclosure claim,
defendants raise the same argument that MERS was entitled to
assign the mortgage both as an equitable trustee and as the
mortgagee.  (Docket Entry # 43).  In seeking to dismiss the
wrongful foreclosure claim, Ditech similarly argues that MERS
had the authority to assign the mortgage both due to its status
as an equitable trustee for the note holder and under the terms
of the mortgage.[11]  (Docket Entry # 37).

---

[9]  MERS was not a party to the 2013 assignment.
[10]  As part of a factual summary, plaintiffs state that
defendants do not have the "Original 'Wet-Ink' Note," which "is
unaccounted for."  (Docket Entry # 47).  Because plaintiffs do
not make a legal argument regarding this "fact," it does not
avoid dismissal.
[11]  In seeking to dismiss the complaint, Ditech only addresses
the wrongful disclosure and chapter 93A claims, i.e., counts
four and five.  Count Three is brought against all defendants
and therefore remains in this action against Ditech at this
juncture.

The general legal principles are well established.  In
Massachusetts, "[T]he mortgage and the note are separate
instruments; when held by separate parties, the mortgagee holds
bare legal interest and the note holder enjoys beneficial
interest." Culhane v. Auroa Loan Services of Nebraska, 708 F.3d
282, 293 (1st Cir. 2013).  Furthermore, under Massachusetts
mortgage law the note and the mortgage may be split.  See Eaton
v. Fed. Nat. Mortg. Ass'n, 969 N.E.2d 1118, 1124-1126 (Mass.
2012).  They need only unite at the time of the foreclosure, at
which time the foreclosing entity must have legal title to the
mortgage and "either hold the note or establish it is servicing
the loan on behalf of the note holder." Id. at 1128-1130.
Indeed, "'Nothing in Massachusetts law requires a foreclosing
mortgagee to demonstrate that prior holders of record legal
interest in the mortgage also held the note at the time each
assigned its interest in the mortgage to the next holder in the
chain.'" Shea v. Federal National Mortgage Association, 31
N.E.3d 1122, 1124 (Mass.App.Ct. 2015) (quoting Sullivan v.
Kondaur Capital Corp., 7 N.E.3d 1113, 1119 (Mass.App.Ct. 2014))
(internal brackets omitted), review denied, 36 N.E.3d 31 (Mass.
2015).  Simply stated, "MERS's interest as mortgagee [is] not
'inherently invalid because it was separated from ownership of
the underlying debt.'" Id. (quoting Sullivan v. Kondaur Capital
Corp., 7 N.E.3d at 1119).  Accordingly, contrary to plaintiffs'

22

argument (Docket Entry # 47, p. 2), there was nothing improper in separating the promissory note from the mortgage.  MERS was not required to have possession of or a beneficial interest in the promissory note in order to assign the mortgage to BAC in 2011.  See Rosa v. Mortgage Electronic Systems, Inc., 821 F.Supp. 423, 432 (D.Mass. 2011); Kiah v. Aurora Loan Services, LLC, 2011 WL 841282, at *8 (D.Mass. March 4, 2011).

MERS was named in the mortgage as the mortgagee and Countywide identified as the lender.  Under "the MERS framework, in which the mortgage and note are held by separate entities from the outset," the law implies an "equitable trust in which the mortgagee 'holds bare legal title to the mortgaged premises in trust for the noteholder' and '[t]he noteholder possesses an equitable right to demand and obtain an assignment of the mortgage.'"[12]  Mills v. U.S. Bank, NA, 753 F.3d 47, 50-51 (1st Cir. 2014) (quoting Culhane, 708 F.3d at 292) (emphasis added);

---

[12]  To briefly explain the MERS system, members of MERS, such as banks and loan servicers, "contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." Culhane, 708 F.3d at 287.  MERS maintains an electronic database tracking "the identities of the noteholders and loan servicers of underlying loans." Id.  To facilitate the transfer of notes, MERS members "agree to name MERS as 'the mortgagee of record in the mortgage so that beneficial ownership and servicing rights of the note may be transferred among MERS members without the need to publicly record such assignment; instead assignments of the note are tracked by MERS' electronic system.'" Lindsay v. Wells Fargo Bank, N.A., 2013 WL 5010977, at *7 (D.Mass. Sept. 11, 2013) (quoting Rosa v. Mortg. Elec. Sys., Inc., 821 F.Supp.2d at 429).

23

Culhane, 708 F.3d at 292 (when, at inception of loan, "mortgage and note are held by separate entities, an equitable trust is implied by law").  As indicated above, the "entity that holds [the] mortgage but not the associated promissory note," i.e., the mortgagee, "holds that mortgage in an equitable trust for the benefit of the noteholder."  Woods v. Wells Fargo Bank, N.A., 733 F.3d at 355.  At its inception, the mortgage in the case at bar gave MERS, as mortgagee and nominee for Countrywide, legal title to the mortgage and gave Countrywide, as note holder and lender, the equitable right to demand and obtain an assignment of the mortgage.

In addition, the contractual language of the mortgage gave MERS, as mortgagee and nominee of Countrywide, the authority to assign the mortgage.  See Culhane, 708 F.3d at 293.  The mortgage states that, "MERS is the mortgagee" under the mortgage and "is acting solely as a nominee for Lender and Lender's successors and assigns."  (Docket Entry # 1-2, pp. 13-14).  It also states that, "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but . . . MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property."  (Docket Entry # 1-2, p. 15).  Notably, the mortgage provides that it "can

24

be sold one or more times without prior notice to Borrower."   ( Docket Entry # 1-2, p. 21).

Initially turning to defendants' argument regarding standing, "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void," such as when "the assignor has nothing to assign or had no authority to make an assignment to a particular assignee." Culhane, 708 F.3d at 291; accord Sullivan v. Kondaur Capital Corp., 7 N.E.3d at 1116 (mortgagor may challenge mortgage assignment as void on basis that foreclosing entity lacked legal authority to conduct foreclosure).  More specifically, a mortgagor has standing to challenge an assignment by MERS to a foreclosing mortgagee "premised on the notion that MERS never properly held the mortgage and, thus, had no interest to assign." Culhane, 708 F.3d at 291.  This authority, in turn, may allow the mortgagor to challenge "the validity of an assignment that purports to transfer the mortgage to a successor mortgagee." Culhane, 708 F.3d at 291; see Dyer v. U.S. Bank, N.A., 141 F.Supp.3d 149, 155 (D.Mass. 2015), aff'd sub nom., Dyer v. Wells Fargo Bank, N.A., 841 F.3d 550 (1st Cir. 2016); see Bank of New York Mellon Corp. v. Wain, 11 N.E.3d 633, 638 (Mass.App.Ct. 2014) (discussing Sullivan v. Kondaur Capital Corp., 7 N.E.3d at 1119).  If, at the time of the 2011 assignment, MERS had no interest in the mortgage to assign, then the assignment to BAC would be void.

25

See Culhane, 708 F.3d at 291 (if "MERS never properly held the mortgage and, thus, had no interest to assign[,] . . . assignment would be void (not merely voidable)" and "plaintiff has standing to challenge the validity of the assignment"); see also Barcelos v. Deutsche Bank National  Trust Co., 2014 WL 2974891, at *2 (Mass.App.Ct. July 3, 2014) (assignment of mortgage void "if the assignor did not hold the mortgage at the time of assignment") (unpublished); Ibanez, 941 N.2d at 53 (discussing "pool of mortgages assigned to a securitized trust" and stating, "there must be proof that the assignment was made by a party that itself held the mortgage").

In the case at bar, plaintiffs challenge the 2011 assignment by MERS because Countrywide previously sold the mortgage (along with the promissory note) to Fannie Mae REMIC Trust 2006-37.  (Docket Entry # 1, ¶¶ 13-14).  As such, MERS "was without rights" and had nothing to assign BAC due to the previous transfer of the mortgage to Fannie Mae REMIC Trust 2006-37, according to plaintiffs.  (Docket Entry # 1, ¶¶ 13-14, 44-45).[13]  Under Culhane and contrary to defendants' argument,

---

[13]  Plaintiffs raise this argument primarily as a basis to support the wrongful foreclosure claim as opposed to the slander of title claim.  The latter claim is grounded upon the unrecorded and concealed sale of the mortgage and the promissory note by Countrywide to Fannie Mae REMIC Trust 2006-37 and the false representations of recording the 2011 and 2013 assignments.  (Docket Entry # 1, ¶¶ 13, 14, 37-41).

plaintiffs have standing to lodge this challenge.  See <u>Culhane</u>, 708 F.3d at 291; <u>Shea v. Federal National Mortgage Association</u>, 31 N.E.3d at 1124 n.9 ("mortgagor had standing to raise claim 'premised on the notion that MERS never properly held the mortgage and, thus, had no interest to assign'") (quoting <u>Culhane</u>, 708 F.3d at 291, in parenthetical).

Examining plaintiffs' argument that MERS had no authority to assign the mortgage and defendants' contrary argument that MERS had such authority, MERS, as mortgagee and equitable trustee, had the contractual and the equitable authority to transfer legal title to the mortgage to BAC, as previously explained.  See <u>Culhane</u>, 708 F.3d at 293.  Furthermore, "*Culhane* made clear that MERS's status as an equitable trustee does *not* circumscribe the transferability of its legal interest." <u>Woods v. Wells Fargo Bank, N.A.</u>, 733 F.3d at 355 (emphasis added); <u>see also</u> <u>Serra v. Quantum Servicing, Corp.</u>, 747 F.3d 37, 40 (1ˢᵗ Cir. 2014) ("In *Culhane*, we ruled unequivocally that MERS may validly possess and assign a legal interest in a mortgage.").  Thus, when "the note and mortgage are split, the mortgagee *retains* and may transfer its bare legal interest in the underlying mortgage." <u>Woods v. Wells Fargo Bank, N.A.</u>, 733 F.3d at 355 (paraphrasing <u>Culhane</u>, 708 F.3d at 292, in parenthetical) (emphasis added).  Legal title to the mortgage is vested in MERS as the mortgagee and not in the note holder.  See <u>Mills v. U.S.</u>

Bank, N.A., 753 F.3d 37, 53 (1st Cir. 2014) (dicta noting, albeit in context of mortgage that did not change hands, that "mortgage remained vested in MERS and not in the noteholder"); Rosa v. Mortgage Electronic Systems, Inc., 821 F.Supp.2d at 430 ("[a]s mortgagee, MERS held title to the Mortgage").  The note holder's "beneficial interest" is distinct from the mortgagee's legal interest in the mortgage and the former amounts to "a 'right or expectancy in something (such as a trust or estate), as opposed to legal title to that thing.'"  Culhane, 708 F.3d at 292 (quoting Black's Law Dictionary 885 (9th ed. 2009)).  Thus, despite an original lender's "right (as note holder) to demand and obtain an assignment of the mortgage in order to enforce its security interest and collect the debt, MERS (as mortgagee) retained the right to assign the mortgage unilaterally absent any restriction in the mortgage document." Shea v. Fed. National Mortgage Association, 31 N.E.3d at 1125; see generally Ibanez, 941 N.E.2d at 54 (Mass. Gen. L. ch. 183, § 21, grants statutory power of sale to mortgagee "but not to a party that is the equitable beneficiary of a mortgage held by another").

Here, the complaint states that "Countrywide sold its intangible interest in the Mortgage and Note to Fannie Mae REMIC Trust 2006-37" shortly after plaintiffs signed the mortgage contract.  (Docket Entry # 1, ¶ 13).  As the note holder and not the mortgagee, Countrywide had the "equitable right to demand

and obtain an assignment of the mortgage," <u>Culhane</u>, 708 F.3d at
292, but there are no facts or reasonable inferences that
Countrywide exercised that right prior to selling its intangible
right to the mortgage to Fannie Mae REMIC Trust 2006-37.
Consequently, the most it transferred to Fannie Mae REMIC Trust
2006-37 was its intangible right to demand an assignment of the
mortgage as opposed to an assignment of legal title to the
mortgage itself.  <u>See</u> <u>generally</u> <u>Kiah v. Aurora Loan Services,</u>
<u>LLC</u>, 2011 WL 841282, at *4 ("transfer of the note automatically
transfers an equitable interest in the underlying mortgage, even
without a formal assignment").  In the meantime, the foregoing
caselaw interpreting mortgages with language similar to
plaintiffs' mortgage establishes that MERS retained its ability
to transfer the mortgage, which it validly exercised in 2011.
Defendants are therefore correct that MERS had the authority to
transfer the mortgage to BAC in 2011.

Plaintiffs also argue that Dawidowicz was not an employee
of MERS but rather an employee of BAC.  (Docket Entry ## 40,
47).  Defendants and Ditech submit that the assignments comport
with section 54B.  (Docket Entry # 37, p. 7) (Docket Entry # 43,
p. 11).  The 2011 assignment, made under oath before a notary
public, states that Dawidowicz is an assistant secretary of
MERS.  Defendants and Ditech are therefore correct that the
assignment complied with section 54B.  <u>See</u> <u>Culhane</u>, 708 F.3d at

294 (rejecting similar argument).  An assignment of a mortgage

in Massachusetts "is effective without the need to independently

establish the authority of the assignor to make the assignment."

In re Marron, 455 B.R. 1, 8 (Bankr.D.Mass. 2011) (citing Kiah,

2011 WL 841282, at *7, and section 54B).  As long as the

assignment comported with the requirements of section 54B, "it

was 'otherwise effective to pass legal title.'" Bank of New York

Mellon Corp. v. Wain, 11 N.E.3d at 638; accord ClearVue

Opportunity XV, LLC v. Sheehan, 2015 WL 5098658, at *6

(Mass.App.Div. Aug. 24, 2015) (quoting Bank of New York Mellon

Corp. v. Wain, 11 N.E.3d at 638).

     Turning to the specifics of the slander of title count, the

claim asserts that defendants concealed the unrecorded

assignment of the mortgage from Countrywide to Fannie Mae REMIC

Trust 2006-37 and misrepresented the assignment by recording the

2011 and 2013 assignments.  (Docket Entry # 1, ¶¶ 37-40).  Count

Three alleges that the act of recording the 2011 and 2013

assignments was purportedly a "false statement" that slandered

plaintiffs' title.  (Docket Entry # 1, ¶¶ 40-41).

     "To prove slander of title, a plaintiff must show that '(1)

the defendant made a false statement, (2) which was published

with malice, and (3) caused injury to the plaintiff.'"  Dumeus

v. CitiMortgage, Inc., 2015 WL 404611, at *2 (D.Mass. Jan. 29,

2015).  The tort "is 'essentially a claim of defamation where

the false statement focuses on the plaintiffs' rights in property," such as a "defamatory recording." <u>RFF Family Partnership, LP v. Ross</u>, 814 F.3d 520, 531 (1st Cir. 2016). Plaintiffs' allegations are similar to those made in <u>Johnson v. Wilmington Trust, N.A.</u>, 2016 WL 5109510, at *5 (D.Mass. Sept. 20, 2016) (allowing motion to dismiss slander of title claim), and are equally deficient.  As stated in <u>Johnson</u>:

> Plaintiff argues that Wilmington's recording that it has current legal ownership of Plaintiff's residence is a false statement.  Here, however, Wilmington made no false statement because the mortgage assignments were valid.  A conclusion that the assignments of the mortgage were valid "means that the statements about which Plaintiff complains were true.  Neither the recording of the valid assignment nor the publication of a notice of foreclosure sale accurately identifying Wilmington as the holder of the mortgage at that time could constitute slander."

<u>Johnson v. Wilmington Trust, N.A.</u>, 2016 WL 5109510, at *5 (quoting <u>Jepson v. HSBC Bank USA National Association</u>, 2013 WL 639184, at *6 (D.Mass. Feb. 20, 2013)) (internal brackets omitted).  As explained above, the 2011 assignment was valid, it complied with section 54B and the 2013 assignment likewise complied with section 54B.  As mortgagee, MERS retained the right to assign the mortgage after "Countrywide sold its intangible interest in the Mortgage and Note" because Countrywide only possessed the intangible right to demand and obtain an assignment of the mortgage.  <u>See Shea v. Federal</u>

National Mortgage Association, 31 N.E.3d at 1125; see also
Culhane, 708 F.3d at 292.

Defendants' arguments to dismiss Count Three because MERS
had the authority to make the assignments and the assignment
complied with section 54B (Docket Entry # 43, § II(D)) are
therefore well taken.  Defendants did not engage in wrongful
conduct in recording the 2011 and 2013 assignments and the
recordings were neither misrepresentations nor false statements
in light of MERS' authority to make the 2011 assignment, BANA's
downstream authority to make the 2013 assignment and the
assignments' compliance with section 54B.[14]  Finally, although
recording a mortgage assignment "is likely the better practice"
than not recording the assignment, Massachusetts law does not
require that the assignment "be in recordable form at the time
of the sale or the subsequent foreclosure sale."  Ibanez, 941
N.E.2d at 53.  Defendants are therefore entitled to a dismissal
of Count Three.

IV.  Wrongful Foreclosure

In Count Four, plaintiffs assert that MERS did not have the
authority to assign the mortgage in 2011 because Countrywide
previously sold the mortgage to Fannie Mae REMIC Trust 2006-37.
Because Fannie Mae held the mortgage, plaintiffs argue that MERS

---

[14]  It is therefore not necessary to address defendants'
remaining arguments relative to dismissing Count Three.

had nothing to assign BAC.  (Docket Entry # 1, ¶¶ 13-14, 44-45)
(Docket Entry # 40, p. 4) (Docket Entry # 47, pp. 5-6).
Defendants maintain that MERS had the authority to assign the
mortgage to BAC in 2011.  (Docket Entry # 43)  Ditech similarly
contends that Countrywide sold the promissory note to Fannie Mae
REMIC Trust 2006-37 and thereby only transferred its beneficial
interest in the mortgage to Fannie Mae REMIC Trust 2006-37 and
that MERS retained the authority to transfer the mortgage.
(Docket Entry # 37).  For reasons explained in Roman numeral
III, defendants and Ditech are correct.

　　　Citing Massachusetts General Laws chapter 103, section 3-
203, plaintiffs further assert that the promissory note was not
indorsed and properly negotiated.  (Docket Entry # 1, ¶ 46).
The Order denying the preliminary injunction motion rejected
this assertion.  (Docket Entry # 38, p. 7).  The subsection in
section 3-203 applicable to indorsement and negotiation "applies
only if the instrument is payable to order or specially indorsed
to the transferor."  Mass. Gen. Laws ch. 183, § 3-203, cmt. 3.
Here, the promissory note set out a "Pay to the Order"
designation to a blank line.  (Docket Entry # 1-2, p. 11).  Like
the promissory note in Deutsche Bank National Trust Co. v.
Lefebvre, 57 N.E.3d 1065 (Mass.App.Ct. 2016) ("note was made
payable to a blank line" and, "after IndyMac indorsed the note
in blank, it became enforceable by whomever next received it

from IndyMac-in this case, Deutsche Bank") (unpublished), it was therefore indorsed in blank and payable to whoever held it. (Docket Entry # 38, p. 7); Mass. Gen. Laws ch. 106, § 3-205(b).

In seeking to dismiss the wrongful foreclosure claim, Ditech argues that the section 35B and section 35C affidavit filed at the Middlesex South Registry of Deeds establishes its authority and standing to foreclose.  It also points out that the certification under Regulation 18.21A(2) advised plaintiffs that Ditech was the authorized agent of the note holder, Fannie Mae.  (Docket Entry # 37).  Plaintiffs, in turn, contest that Ditech is the note holder.  (Docket Entry # 40, p. 3) (Docket Entry # 1, ¶ 50).

The section 35B and section 35C affidavit recorded at the Middlesex South Registry of Deeds states that Ditech is the authorized agent of the holder of the promissory note for purposes of" foreclosing the "mortgage on behalf of" the note holder.  (Docket Entry # 1-2, p. 34).  As posited by Ditech, this evidence is sufficient to establish that it properly holds the promissory note and has the authority to foreclose.  See Eaton, 969 N.E.2d at 1133 n.28 ("foreclosing mortgage holder . . . may establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale by filing an affidavit in the appropriate registry of deeds"); Lamson v. Chase Home Finance, LLC, 24 N.E.3d 1060 (Mass.App.Ct. 2015)

34

(rejecting argument that "defendant is not the holder of the
note and has not shown that it was authorized by the holder of
the note to commence foreclosure proceedings" in light of
section 35C affidavit "that it holds the note as custodian for"
Fannie Mae "and that Fannie Mae authorized the foreclosure
proceedings," which mortgagor failed to refute) (unpublished);
Foregger v. Residential Credit Solutions, Inc., 2013 WL 3208596,
at *11 (D. Mass. June 21, 2013) ("*Eaton* suggests that
"uncontested sworn statement by a mortgagee that it has the
authority to act on behalf of a note holder is sufficient" to
establish standing to foreclose).  Plaintiffs' conclusory
statements that they "stipulate that Ditech . . . does not hold
the note" (Docket Entry # 1, ¶ 50) and contest that Ditech is
the note holder (Docket Entry # 40, p. 3) are unavailing in
light of the section 35B and 35C affidavit.

    In the context of the wrongful foreclosure claim,
defendants and Ditech additionally argue that the mortgage and
the promissory note can be split.  (Docket Entry ## 37, 43).
Plaintiffs, in turn, assert that BANA did not assign the
mortgage and the promissory note to Green Tree because BANA did
not hold the note at the time of the assignment.  (Docket Entry
# 1, ¶¶ 48, 51).  As a factual matter, MERS only assigned the
mortgage to BAC in 2011, as opposed to the mortgage and the
promissory note, and BANA thus assigned only the mortgage to

Green Tree in 2013.  For reasons stated in Roman numeral III,
defendants and Ditech are correct.  As accurately stated by
Ditech, Massachusetts law only requires that the foreclosing
entity hold the mortgage and be authorized by the note holder to
foreclose.  (Docket Entry # 37); Eaton, 969 N.E.2d at 1128-1131;
Shea v. Federal National Mortgage Association, 31 N.E.3d at
1124.  Consequently, the fact that BANA did not hold the
promissory note when it assigned the mortgage to Green Tree in
2013 does not render the mortgage assignment void or voidable.
In addition, the section 35B and section 35C affidavit establish
that Ditech is the authorized agent of the note holder.  See
Eaton, 969 N.E.2d at 1131 (agency principles allow foreclosing
mortgagee to act as agent of the note holder).

    As a final matter, Ditech argues that the foreclosure has
not occurred.  As a result, plaintiffs cannot maintain a
wrongful foreclosure claim, according to Ditech.  (Docket Entry
# 37, n.4).  Where, as here, there has been no foreclosure, the
wrongful foreclosure claim is subject to dismissal.  See Rice v.
Santander Bank, N.A., 196 F.Supp.3d 146, 152 (D.Mass. 2016)
(dismissing unlawful foreclosure claim partly "because Santander
has not foreclosed on the property"); In re Jackson, 545 B.R.
62, 72 (Bankr.D.Mass. 2016) ("[t]here can be no wrongful
foreclosure claim because there was never a foreclosure sale").

The argument therefore provides an alternative basis to dismiss the wrongful foreclosure claim against Ditech.

In short, plaintiffs fail to set out a plausible wrongful foreclosure claim.  As argued by defendants and Ditech, the 2011 and 2013 recorded mortgage assignments comply with section 54B, they provide a chain of title to the mortgage and the promissory note and mortgage can be split prior to the foreclosure notice and foreclosure sale.  As explained, the unrecorded sale of the mortgage to Fannie Mae REMIC Trust 2006-37 prior to the 2011 recorded assignment by MERS does not destroy this chain of title.  Ditech also holds the promissory note, indorsed in blank, on behalf of Fannie Mae, the holder.  Count Four is subject to a Rule 12(b)(6) dismissal.

V.   Chapter 93A Claim

Defendants do not address the merits of Count Five because the court denied the preliminary injunction motion.  (Docket Entry # 43, n.5).  Accordingly, the chapter 93A claim against defendants in Count Five remains in this action.  Construing Count Five as a claim for injunctive relief, Ditech argues that it is subject to a Rule 12(b)(6) dismissal because "'[a]n injunction is not a cause of action, but a remedy.'" (Docket Entry # 37, p. 9) (quoting Matt v. HSBC Bank, 968 F.Supp.2d 351, 356 (D.Mass. 2013)).

Ditech is correct that "injunctive relief is not a stand-alone cause of action under Massachusetts or federal law." Payton v. Wells Fargo Bank, N.A., 2013 WL 782601, at *6 (D.Mass. Feb. 28, 2013).  That said, Ditech overlooks the chapter 93A claim pleaded in Count Five.  The complaint is filed pro se and therefore liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520-521 (1972); accord Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'").  It is true that the caption of the count depicts Count Five as an "application for Temporary Restraining Order and Order to Show Cause Re[:]  Preliminary Injunction." (Docket Entry # 1, p. 13) (capitalization and bolding omitted). One of the six paragraphs in the complaint that is specific to Count Five, however, states, "This application is made pursuant to the provisions of M.G.L.c 93A [sic] on the grounds that Defendants are engaging in deceptive business practices with respect to Mortgage loan servicing, assignments of note and mortgage, and attempting to deceptively sell Plaintiffs property."  (Docket Entry # 1, ¶ 58).  Liberally construing the complaint, Count Five therefore raises a chapter 93A claim. Ditech does not address the claim and, accordingly, it remains in this action at the present time.

<u>CONCLUSION</u>

38

In accordance with the foregoing discussion, this court **RECOMMENDS**[15] that defendants' motion to dismiss (Docket Entry # 42) is **ALLOWED** as to counts one, two, three and four.[16]  It is further **RECOMMENDED**[17] that Ditech's motion to dismiss (Docket Entry # 37) Count Four is **ALLOWED** and Count Five is **DENIED** inasmuch as the latter count sets out a chapter 93A claim. Count Three remains in this action against Ditech[18] and Count Five remains against defendants as explained in Roman numeral V.

_/s/ Marianne B. Bowler_
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[15]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection should be included.  <u>See</u> Fed.R.Civ.P. 72(b).  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.
[16]  The recommended dismissal of Count One is without prejudice.
[17]  See footnote 15.
[18]  See footnote 11.